UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

JEFFREY HUBBARD
2119 North Cloudview Drive
Appleton, Wisconsin 54914

      Plaintiff,

   v.

CANATURE WATERGROUP USA, INC.
9760 Mayflower Park Drive, Suite 110
Carmel, Indiana 46032

      Defendant

Case No: 22-cv-513

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

COMES NOW Plaintiff, Jeffrey Hubbard, by his counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the court as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Employee Retirement Income Security Program, as amended, 29 U.S.C § 1001, et. seq. ("ERISA"), specifically the Consolidated Omnibus Budget Reconciliation Act, as amended, 29 U.S.C § 1161, et. seq. ("COBRA").

2.    This court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amounts of damages, exclusive of interest and costs, exceeds $75,000 and is between citizens of different States.

3.    This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves Wisconsin common law breach of contract claims, and these

claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue in this District is proper pursuant to 28 U.S.C. 1391 because Plaintiff resides, and Defendant has substantial and systematic contacts, in this District.

## PARTIES AND COVERAGE

5. Plaintiff, Jeffrey Hubbard, is an adult male resident of the State of Wisconsin with a mailing address of 2119 North Cloudview Drive, Appleton, Wisconsin 54914.

6. Defendant, Canature Watergroup U.S.A., Inc., is an entity incorporated in the State of Nebraska with a principal place of business of 9760 Mayflower Park Drive, Suite 110, Carmel, Indiana 46032.

7. Defendant is a wholesale water treatment equipment company.

8. During Plaintiff's employment with Defendant, Defendant was a "plan sponsor" of a "group health plan," as those terms are used in 29 U.S.C § 1161, et. seq.

9. During Plaintiff's employment with Defendant, Defendant employed more than twenty (20) employees.

## GENERAL ALLEGATIONS

10. In July 2017, Defendant re-hired Plaintiff into the position of Director of Commercial Business Development.

11. During the Plaintiff's employment with Defendant, Plaintiff performed compensable work on behalf of Defendant, for Defendant's benefit, at Defendant's direction, and/or with Defendant's knowledge in the State of Wisconsin in the position of Director of Commercial Business Development, in addition to performing other duties and responsibilities in Defendant's "Independent Water Dealer" division.

12. During Plaintiff's employment with Defendant, Plaintiff reported directly to John Cardiff, Executive Vice President of Business Development, and, at times, Chris Wilker, Executive Vice President of Business Development, and/or Jeff Warner, President.

13. On or about July 31, 2017, Plaintiff and Defendant entered into a written "Offer of Employment" (hereinafter simply, the "Employment Contract"), which, among other things, memorialized, established, and governed the terms and conditions of Plaintiff's employment with Defendant, including Plaintiff's compensation and Plaintiff's length and term of employment with Defendant.

14. In accordance with the Employment Contract, Plaintiff's "start date" in the position of Director of Commercial Business Development was August 14, 2017.

15. In accordance with the Employment Contract, the "term" of Plaintiff's employment was "indefinite," subject to only either Plaintiff's "advance written notice" of resignation and/or Defendant's termination of Plaintiff "for cause."

16. In accordance with the Employment Contract, Defendant agreed to compensate Plaintiff with "a base salary in the gross amount of $114,800 annually" for work performed on Defendant's behalf, for Defendant's benefit, at Defendant's direction, and/or with Defendant's knowledge in the position of Director of Commercial Business Development.

17. In accordance with the Employment Contract, Defendant agreed to reimburse Plaintiff "for all reasonable business related expenses which you actually and properly incur in carrying out your duties and responsibilities."

18. In accordance with the Employment Contract and in the event Defendant terminated Plaintiff's employment, Defendant agreed to compensate Plaintiff with "outstanding vacation pay earned and unpaid."

19. On or about December 10, 2019, Defendant increased Plaintiff's "base salary" to $128,785 annually for work performed on Defendant's behalf, for Defendant's benefit, at Defendant's direction, and/or with Defendant's knowledge in Plaintiff's "expanded role in the U.S. Independent Water Dealer (IWD) Business," in addition to compensation pursuant to Defendant's "bonus incentive plan," which was based on "1.5% of the year over year revenue growth on all revenues in the U.S. IWD business, including Commercial," was "not capped," and was not expressly subject to purported deductions for price increases.

20. On or about January 6, 2022, Defendant agreed to provide Plaintiff with a one-and-a-half percent (1.5%) cost of living increase, which was to be retroactively applied to Plaintiff's employment with Defendant during the year 2021 and moving forward during Plaintiff's employment with Defendant the year 2022.

21. During Plaintiff's employment with Defendant, Plaintiff was a participant in Defendant's group health plan.

22. On March 4, 2022, Defendant terminated Plaintiff's employment.

23. Defendant did not have "cause," in accordance with the Employment Contract, to terminate Plaintiff's employment on March 4, 2022.

24. Subsequent to Defendant's termination of Plaintiff on March 4, 2022, Defendant did not reimburse Plaintiff with the agreed-upon "business related expenses" that he properly incurred in the furtherance of his employment with Defendant, in the amount of approximately $944.53.

25. Subsequent to Defendant's termination of Plaintiff on March 4, 2022, Defendant did not compensate Plaintiff with the agreed-upon "outstanding vacation pay earned and unpaid," in the amount of approximately $11,971.41.

26. Subsequent to Defendant's termination of Plaintiff on March 4, 2022, Defendant did not compensate Plaintiff with the agreed-upon cost of living increase for the calendar years 2021 and 2022, in an amount that remains to be determined.

27. As a result of Defendant's unlawful failure to compensate Plaintiff with agreed-upon payments, compensation, and remuneration from Defendant as described herein, and as a result of Defendant's unlawful termination of Plaintiff in violation of the Employment Contract, Defendant owes Plaintiff a total monetary amount well in excess of $75,000.00, inclusive of lost wages and other payments, bonuses, compensation, and remuneration, lost employment benefits, exemplary damages, penalties, and interest, in addition to attorneys' fees and costs and any other damages or relief this Court deems just and equitable.

### FIRST CAUSE OF ACTION – COBRA VIOLATIONS

28. Plaintiff reasserts and incorporates all previous paragraphs as if they were set forth herein.

29. During Plaintiff's employment with Defendant, Defendant was a "plan sponsor" of a "group health plan," as those terms are used in 29 U.S.C § 1167.

30. During Plaintiff's employment with Defendant, Defendant employed more than twenty (20) employees, in accordance with 29 U.S.C § 1161.

31. During Plaintiff's employment with Defendant, Plaintiff was a participant in Defendant's group health plan.

32. During Plaintiff's employment with Defendant, Plaintiff was a "covered employee" of, in, and/or by Defendant's group health plan, as that term is used in 29 U.S.C § 1167.

33. Defendant's termination of Plaintiff's employment on March 4, 2022 was a "qualifying event," as that term is used in 29 U.S.C § 1163.

34. On or before April 3, 2022, Defendant did not notify the administrator (and/or the plan sponsor) of its group health plan of Plaintiff's termination on March 4, 2022, in accordance with 29 U.S.C. § 1166 (a)(2).

35. To date, Defendant has not timely notified Plaintiff of his rights under COBRA, in violation of 29 U.S.C. § 1166 (a)(2) and (c).

36. As a direct and proximate result of Defendant's continuing COBRA violations, Plaintiff has sustained monetary damage and injuries, including the loss of health insurance benefits, financial distress, and expenditure of attorneys' fees and costs to prosecute this matter, in addition to all other damages and forms of relief as provided by provision outlined in 29 U.S.C. § 1132.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT

37. Plaintiff reasserts and incorporates all paragraphs set forth above as if they were set forth herein.

38. Plaintiff was entitled to wages and/or other agreed-upon payments, compensation, and remuneration from Defendant in accordance with the Employment Contract.

39. Defendant failed to compensate Plaintiff with the wages and/or other agreed-upon payments, compensation, and remuneration in accordance with the Employment Contract.

40. On March 4, 2022, Defendant terminated Plaintiff's employment.

41. Defendant did not have "cause," in accordance with the Employment Contract, to terminate Plaintiff's employment on March 4, 2022.

42. As a result of Defendant's failure to compensate Plaintiff in such a fashion as described herein, and because Defendant did not have "cause" to terminate Plaintiff's employment in accordance with the Employment Contract, Plaintiff has suffered monetary loss and/or damages,

including but not limited lost wages, bonuses, compensation, remuneration, benefits, and attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing wages and/or other agreed-upon payments, compensation, and remuneration in accordance with the Employment Contract;

2. Order Defendant to make Plaintiff whole by providing Plaintiff with lost wages and other payments, bonuses, compensation, remuneration, and lost employment benefits as a result of Defendant's termination of Plaintiff in violation of the Employment Contract;

3. Order Defendant to make Plaintiff whole by providing Plaintiff with the COBRA damages provision outlined in 29 U.S.C. § 1132, together with exemplary damages, penalties, interest, and costs as permitted by ERISA;

4. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute; and

5. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES**

Dated this 28th day of April, 2022

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

s/ *Scott S. Luzi*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
E-Mail: jwalcheske@walcheskeluzi.com
E-Mail sluzi@walcheskeluzi.com
E-Mail dpotteiger@walcheskeluzi.com